IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

CLINTON STRANGE,

*Plaintiff*

v.

SMOOTHIE PEDDLER,

*Defendants*

CIVIL ACTION COMPLAINT

FOR VIOLATIONS OF:

THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

&

The 2002 Massachusetts General Court's *Telemarketing Solicitation Act,* G. L. c. 159C, inserted by St. 2002, c. 265, § 1.

**Jury Trial Demanded**

## PRELIMINARY STATEMENTS:

1. This is an enforcement action brought in good faith by an adult individual Plaintiff, Clinton Strange, against a fictitiously named entity, SMOOTHIE PEDDLER ("DEFENDANT"), for *allegedly* violating the provisions of the Telephone Consumer Protection Act of 1991 ("TCPA")'s restrictions on autodialed calls to a cellphone without consent, and the Do-Not-Call provisions of the TCPA; as well as Massachusetts Law themed The Massachusetts Telemarketing Solicitation Act of 2002. Plaintiff is seeking a maximum recovery of damages together along with post judgment interest, and all costs of bringing and litigating the action.

2. The Plaintiff does not know the true identity of the fictitiously named Defendant, but will move the Court for leave to conduct limited discovery before a Rule 26(f) conference to the end that he would serve a Rule 45 subpoena on a Massachusetts based mass text messaging platform provider via the Massachusetts registered agent to ascertain the Defendant's identity; and subsequently file an amended complaint naming the proper parties or party.

## JURISDICTION & VENUE:

3. **Jurisdiction** primarily arises under a Federal Question as the TCPA is a Federal Statute pursuant to 28 U.S.C. § 1331.

4. **Supplemental Jurisdiction** would be properly applied in this case because the alleged conduct that is under Federal Question Jurisdiction essentially mirrors Plaintiff's Massachusetts Commonwealth ("State") Law claims pursuant to 28 U.S.C. § 1367.

5. **Venue** lies proper in this U.S. District because, despite the fact that the Defendant/s will likely be located in Texas, the supposed Texas Defendants were a party to a contract or

agreement with a Massachusetts mass texting platform provider that was utilized [by Defendants] to transmit [place calls] text messages to Plaintiff's cellphone in Louisiana. Neither Texas nor Louisiana Federal Courts would have a compelling interest in presiding over a case involving Massachusetts Law or seeing a Massachusetts State Consumer Protection Law enforced; and likely would be less familiar with the Massachusetts Statutes than this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES:

6. **Plaintiff CLINTON STRANGE** is an adult individual residing at the address of:
   CLINTON STRANGE
   7021 WINBURN DRIVE
   GREENWOOD, LA 71033

7. **Defendant SMOOTHIE PEDDLER** is a fictitious named person or entity described herein as the enduser/ subscriber of a mass texting platform operated by SimpliSmarter, Inc, a Massachusetts Profit Corporation, on the specific dates of 10/16/2018 to 10/19/2018 that caused to be transmitted to Plaintiff's cellphone number 318-780-8946 text messages from "Smoothie Factory" from Short Code 411669.

## THE FACTUAL ALLEGATIONS:

### The Documented Incidents

8. On October 16, 2018 at 9:17am CST the Defendants sent an unsolicited autodialed text message telemarketing "call" to the Plaintiff's cellphone number 318-780-8946.

9. On October 16, 2018 at 2:28pm CST the Defendants sent an unsolicited autodialed text message telemarketing "call" to the Plaintiff's cellphone number 318-780-8946.

10. On October 19, 2018 at 2:00pm CST the Defendants sent an unsolicited autodialed text message telemarketing "call" to the Plaintiff's cellphone number 318-780-8946.

11. All the above text messages advertised the availability *of* or alternatively *were* telephonic solicitations of Defendants' products, goods, and or services "Smoothies" or "Smoothie Factory" products.

12. Plaintiff incorporates for reference herein a sworn statement that substantiates and better documents the Plaintiff's allegations as laid out above [See Exhibit 1].

13. Plaintiff acknowledges that it is usual to (acceptable practice) to label incorporated Exhibits to a complaint or pleading in the alphabet form [A, B, C etc...], but in this case the Plaintiff had to label his Exhibits numerically because (at least one of) the Exhibits contained alphabetically incorporated exhibits within [it].

14. The Plaintiff represents to the Court that on March 13, 2020 at 3:22pm CST Defendants' Mass Texting Platform Provider (Text Ripple – Legally SimpliSmarter, Inc., a Massachusetts Domestic Profit Corporation) phoned Plaintiff in regard to the "calls" / text message spam alleged [See Exhibit 2].

15. Plaintiff represents that Defendants' text message platform provider (as referenced above) indicated that a Texas based entity/s would be liable [for the autodialed texts].

16. Plaintiff avers that because the [hypothetical] Texas based entity/s were parties with less superior bargaining power than that of the Platform Provider (SimpliSmarter, Inc. f/k/a Text Ripple, Inc. d/b/a Text Ripple) that any contract or agreement reached by and between those parties would be subject to Massachusetts Law ergo this Court would have personal jurisdiction over some or all of the Defendant's that become identified.

<u>Understanding the "Product" Being Offered</u>

17. Smoothie Factory purports to offer fresh fruits and vegetables in its blended drinks. Plaintiff has never been a customer of Smoothie Factory and has never partaken of their

products. Plaintiff's understanding of their business model is that they are a Franchise based model Company that markets fresh fruit & vegetable based pureed "smoothies" to consumers (among other sorts of blended concoctions) certainly in the Dallas, Texas market and beyond.

## The Harm and Damages Suffered by the Plaintiff

18. The autodialed text message solicitations of Defendants' products "smoothies" were annoying, harassing, and caused the Plaintiff to waste his time dealing with the unsolicited text message spam.

19. The text message spam caused Plaintiff aa aggregated loss of 400 bytes of data usage off his Verizon Wireless mobile data plan.

20. The text messages also occupied at least 400 bytes of valuable (storage) disk space on his cellphone's memory chip.

## How the Plaintiff Sought to Mitigate Damages

21. On January 24, 2018 Plaintiff visited the Federal Do-Not-Call list website and confirmed his cellphone number 318-780-8946 was registered on the Federal Do-Not-Call List on October 29, 2014 [See Exhibit 1-H].

22. Only residential subscribers (to wireless carriers) are allowed to register their cellphone on the Federal Do-Not-Call List. Plaintiff is/ was a residential use cellphone subscriber who utilizes his cellphone for a number of other household tasks such as a bedside alarm clock, a home telemedicine tool for contacting his VA Medical Team through "Vets App" and for home television viewing though his cellphones' linked Google Chromecast streaming device; or did before disconnecting the phone around March 2019 due to too much unsolicited marketing calls and commercial spam text messages.

23. Plaintiff served written correspondence on Smoothie Factory on October 18, 2018 and made a Do-Not-Call demand on them. On October 23, 2018 Smoothie Factory's parent company Counsel stated to the Plaintiff in an email that Smoothie Factory did not send the text messages and that Text Ripple was responsible.

24. Both Plaintiff and Smoothie Factory tried to contact text ripple about the issues, but the emails would "bounce-back", and the phone numbers were invalid or "out of service".

25. Even though Smoothie Factory denied any involvement with the text messages and claimed to have never heard of them they directed the Plaintiff to text "STOP" to "opt-out" of the marketing campaign he never opted-into despite the fact that there were not opt-out instructions listed in the body of the texts.

### An "ATDS" Was Utilized to Transmit & Initiate the Violative Text Messages

26. The autodialed text message solicitations of Defendants' products "smoothies" were not directed at a particular consumer – meaning they were generically templated texts sent from a platform capable of mass texting hundreds of thousands of cellphones in seconds "in one click" ((like in *Geraci v. Red Robin International, Inc.* No. 1:19-cv-01826-RM-KLM (D. Col.) (Mar. 25, 2020) a 10th Cir. Footprint case which has no binding authority over this court)) "Despite the existence of some gray area as to the parameters of an ATDS, the Court finds that Plaintiff's allegations are sufficient to state a plausible claim for relief at this stage of the case. He alleges that the messages were sent from a specific SMS short code and that Defendant stored his cell phone number in its text messaging system with thousands of other phone numbers and then automatically sent identical messages to him and thousands of other individuals at the same time. He also alleges he continued to receive messages after following the instructions for opting out of receiving

further messages. And he alleges that no human directed any single text message to Plaintiff's number and that identical messages were composed of pre-written templates of text and sent to thousands of phone numbers. These allegations do not merely recite the statutory language above. Moreover, as other courts have noted, plaintiffs in TCPA cases are without a realistic means of alleging precisely the type of machine a defendant has used to make unauthorized calls or send unauthorized text messages. *See, e.g., In re Jiffy Lube Int'l, Inc.*, 847 F.Supp.2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage."); *Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (noting that "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication" that may have violated the TCPA)".

27. Defendants' Platform provider indicates on the terms of use section of the website [See Exhibit 3] that the users of the service consent (at: ¶ 7 https://simplismarter.com/terms/ page last visited 11/28/2020):

> *"By opting in, you agree to receive recurring*
> *text messages (SMS/MMS) from an*
> <u>*automatic telephone dialing system*</u> *or*
> *from any other electronic means or program.*
> *Opting in is not required (directly or indirectly)*
> *as a condition of purchasing any property, goods, or services.*
> *This is a recurring message program and*
> *message and data rates may apply."*

28. Pursuant to 47 U.S.C. § 227(a)(1), "[t]he term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to

be called, using a random or sequential number generator; and (B) to dial such numbers." The Federal Communications Commission is vested with authority to promulgate implementing regulations for the TCPA. *See ACA Int'l*, 885 F.3d at 691. In *ACA International*, however, the United States Court of Appeals for the District of Columbia overturned the FCC's attempt to clarify the types of calling equipment that fall within the TCPA. Id. At 692. The FCC has not yet issued new guidance on what constitutes an ATDS.

## THE COUNTS & CAUSES OF ACTION:

### COUNT I:

### (Plaintiff v. All Defendants)

### 47 U.S.C. § 227(b)

29. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

30. Plaintiff seeks $500 to $1,500 in damages for each and every violation under this count.

### COUNT II:

### (Plaintiff v. All Defendants)

### 47 U.S.C. § 227(c)

31. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

32. Plaintiff received more than one telemarketing call within a one-year period to a number registered on the Federal Do-Not-Call List.

33. Plaintiff seeks damages of $500 to $1,500 for each and every violation under this count.

## CAUSE OF ACTION III:

### (Plaintiff v. NO ONE YET)

### Massachusetts G. L. c. 159C *et seq.*

34. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

35. Plaintiff cannot allege this cause of action yet pursuant to notice requirements of Massachusetts Law Ch 93A.

36. When the Plaintiff discovers the Defendant/s identity he will notice a 30-day claim on them and amend his complaint accordingly.

## PRAYER FOR RELIEF:

~~~ **Jury Trial Demanded on all Issues so Triable Pursuant to the Seventh Amendment to the U.S. Constitution**~~~

**Wherefore,** the Plaintiff seeks Judgment in Plaintiff's favor, and damages against Defendants in the form of the following requested relief:

Statutory Damages;

Actual Damages;

Stacked Damages;

Trebled Damages;

Enhanced Civil Penalties under Massachusetts Law;

Enjoinder from Future Violations;

Pre and or Post Judgment Interest,

And such other and further relief the Court deems necessary, just and proper.

Respectfully Submitted,

X _(signature)_           11-29-2020
Clinton Strange                    Dated
Pro Se
7021 Winburn Drive
Greenwood, LA 71033
318-780-8890
PARSMLLC@GMAIL.COM